DAVID A. HUBBERT
Acting Assistant Attorney General

CASSONDRA L. MCCORMICK
Washington DC Bar
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
202-514-6632 (v)
202-307-0054 (f)
Cassondra.L.McCormick@usdoj.gov
*Attorney for the United States of America*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> SOLEDAD RUBIO dba <br> GIG UNIVERSAL MULTI SERVICIOS, <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR PERMANENT INJUNCTION** |

## INTRODUCTION

The United States of America, by and through undersigned counsel, complains and alleges as follows:

1. The United States of America brings this action to restrain and enjoin Defendant Soledad Rubio ("Rubio") from:

   a. preparing, filing, or assisting in the preparation or filing of federal tax returns or other related documents, including electronically-submitted tax returns, for any entity or person other than herself;

   b. engaging in any activity subject to penalty under 26 U.S.C. §§ 6694, 6695, and 6701; and

   c. engaging in any fraudulent or deceptive conduct which substantially interferes with the proper administration and enforcement of the internal revenue laws.

2. This action is authorized by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and is brought at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.

## JURISDICTION AND VENUE

3. This Court has jurisdiction to hear the action pursuant to 28 U.S.C. §§ 1340, 1345, and 26 U.S.C. § 7402(a).

4. Venue is proper in this Court under 26 U.S.C. §§ 7407, 7408, and 28 U.S.C. § 1391(b), because Rubio resides and prepares tax returns in King County, Washington, within this judicial district, and a substantial part of the events or omissions giving rise to the United States' claims occurred within this judicial district.

## DEFENDANT

5. Rubio is a paid tax return preparer who prepares federal income tax returns, as defined by 26 U.S.C. § 7701(a)(36).

6. Prior to preparing tax returns, Rubio was a real estate agent and then a loan officer.

7. Rubio took courses in business management at the University of Washington Tacoma but did not graduate.

8. She does not have formal tax return preparation training but did take courses related to bookkeeping and payroll at a local community college.

9. In 2009, Rubio started her own business under the name GIG Universal Multi Servicios ("GIG"), which provided interpretation, translation, and bookkeeping services for small businesses.

10. From 2014 to present, GIG focused on tax preparation and bookkeeping services for various contractor-type business.

11. Rubio oversees and is responsible for supervising the four to five other tax preparers at GIG.

12. The other tax return preparers are hired as independent contractors and are issued a Form 1099-MISC, Miscellaneous Income, from GIG.

13. Rubio trains the other tax return preparers on how to prepare tax returns.

14. Rubio has stated that she reviews all income tax returns prior to electronically filing them with the IRS.

15. The IRS requires anyone who prepares or assists in preparing federal tax returns for compensation to obtain and annually renew a Preparer Tax Identification Number ("PTIN").

16. The IRS issues PTINs to individual tax return preparers and PTINs are not transferrable.

17. Every person who prepares returns must have their own PTIN.

18. As a paid federal tax return preparer, the IRS issued Rubio the following PTIN: PXXXX6587.

19. During 2016 and 2017, Rubio had four contractors at GIG who prepared income tax returns: Mariamagdalena N. Elgio, a.k.a. Maria Elgio; Giovanna Vega, a.k.a. Giovanna Mendoza; Lisa Escobar; and Edilsa Martinez.

20. Edilsa Martinez used Rubio's PTIN (PXXXX6587) to file clients' returns.

21. Each of the other contractors used a separate PTIN.

22. Maria Elgio's PTIN was PXXXX5697.

23. Giovanna Vega's PTIN was PXXXX7385.

24. Lisa Escobar's PTIN was PXXXX8196.

25. The IRS requires businesses that file more than ten federal tax returns to obtain an Electronic Filing Identification Number ("EFIN").

26. Each business has its own EFIN.

27. The application must include a Responsible Official who has authority over the business the EFIN was assigned to.

28. This person is responsible for all returns e-filed from that business location.

29. Rubio and the contractors at GIG use the EFIN XX3876.

30. EFIN XX3876 is assigned to GIG.

31. Rubio is the Registered Agent and a Governor of GIG.

## DEFENDANT'S ACTIVITIES

32. Rubio prepares federal personal tax returns that underreport tax due by fraudulently claiming false or inflated deductions and expenses.

33. Rubio underreports tax due through fabricated Schedule A, Itemized Deductions, pertaining to Employee Business Expenses and State and Local Taxes.

34. Rubio overstates or fabricates expenses on the Schedule C, Profit or Loss from Business (Sole Proprietorship), to reduce the net income subject to self-employment tax.

35. Rubio overstates the Earned Income Tax Credit ("EITC"), 26 U.S.C. § 32(a), Child Tax Credit ("CTC"), 26 U.S.C. § 24(a), and Additional Child Tax Credit ("ACTC"), 26 U.S.C. § 24(d), by including non-qualifying dependents to calculate her clients' claimed amounts of EITC, CTC, and/or ACTC.

36. Rubio uses improper filing statuses that would result in an increased standard deduction for which the clients are not entitled.

37. According to IRS records, GIG prepared 2,818 income tax returns for the 2016 tax year in 2017; 2,361 income tax returns for the 2017 tax year in 2018; and 1,514 income tax returns for the 2018 tax year in 2019.

38. Of the total income tax returns prepared, Rubio prepared 1,611 income tax returns for the 2016 tax year in 2017; 830 income tax returns for the 2017 tax year in 2018; and 821 income tax returns for the 2018 tax year in 2019.

39. Rubio engaged in more than one abusive scheme where she knew or should have known that she reported false information on her customers' returns.

**False Schedule A, Itemized Deductions**

40. Rubio prepares returns that underreport taxes due by claiming non-existent or overstated Unreimbursed Employee Business Expenses and State and Local Taxes on Schedule A, Itemized Deductions, in order to reduce the customer's taxable income.

41. Rubio's customers whose returns included a Schedule A had employee expenses that were far less than Rubio claimed on their returns.

42. The customers were unaware of the fabricated or exaggerated reported expenses, did not incur these expenses, and did not ask Rubio to report those items on their returns.

43. The returns described below are specific examples of Rubio's abusive scheme of fabricating unreimbursed employee business expenses and state and local taxes on Schedule A:

    a. Rubio falsely reported that Customer 1 incurred $27,440 for Employee Business Expenses. Customer 1 said that he did not keep any receipts or records for these expenses. Customer 1 did not recall giving any amounts

        to Rubio regarding these expenses and the amounts of Tools, Uniforms, Travel, and Parking were too high.

    b. Rubio falsely reported that Customer 2 incurred $17,812 for Employee Business Expenses. Customer 2 did not provide Rubio with any documentation to support the mileage expenses.

    c. Rubio falsely reported that, in 2014, Customer 3 incurred $25,594 in Employee Business Expenses and, in 2013, incurred $39,694 in Employee Business Expenses. Customer 3 did not provide any documents for these expenses. Rubio falsely reported that Customer 3 incurred $4,588 in Personal Property Tax, and $5,280 in Other Taxes, in 2014, and incurred $3,865 in Real Estate Tax, and $3,865 in Personal Property Tax, in 2013. Customer 3 did not own property in 2013 and did not purchase a home until November of 2014.

    d. Rubio falsely reported that Customer 4 incurred $12,013 in Employee Business Expenses, $2,585 in Tools, and $8,400 in Parking. Customer 4 did not provide Rubio with any figures regarding mileage because he does not keep a milage log. No documents were given regarding any of the above expenses. Additionally, the parking expense is deemed to be a commuting expense and is therefore not deductible.

    e. Rubio falsely reported that Customer 5 incurred $20,437 in Employee Business Expenses in milage and unforms. Customer 5 did not provide Rubio with his milage log.

44. As a result of Rubio's conduct, the above-identified customers underreported their tax liabilities and the IRS erroneously issued refunds these customers were not entitled to receive.

**False Schedule C, Unreimbursed Business Expenses**

45. Rubio prepares returns that underreport taxes due by claiming non-existent or overstated Unreimbursed Employee Business Expenses on Schedule C, Profit or Loss from Business (Sole Proprietorship), in order to reduce the customer's taxable income.

46. The returns described below are specific examples of Rubio's abusive scheme of fabricating unreimbursed employee business expenses on Schedule C:

   a. Rubio falsely reported that Customer 6 incurred 29,855 business miles. Rubio falsely reported that Customer 6 incurred $450 for Repairs & Maintenance, $880 for Supplies, $360 for Utilities, and $1,465 in Other Expenses to which Customer 6 was not entitled. Customer 6 is an Uber driver. Rubio checked the box on line 47(a) of Schedule C Part IV, indicating that Customer 6 had written evidence to support the deduction. Customer 6 does not maintain any mileage record other than the statement from Uber.

   b. Rubio falsely reported that Customer 7 incurred $1,250 for Legal & Professional and $8,800 Repairs & Maintenance. Customer 7 did not incur any Legal or Professional Fees and did not have repairs or maintenance.

COMPLAINT FOR PERMANENT INJUNCTION 7

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-514-6632

   Rubio falsely claimed that Customer 7 incurred $6,580 in Materials. Customer 7 only spent $300 on materials.

  c. Rubio falsely claimed $32,589 in Schedule C expenses on Customer 8's return. Customer 8 did not bring any documentation for the preparer and did not know where the figures in Schedule C came from.

  d. Rubio falsely reported that Customer 9 incurred $1,350 for Insurance, $800 for Repairs & Maintenance, and $4,215 in Supplies. Customer 9 did not incur any Supplies expense and did not tell Rubio otherwise. The expenses for Insurance and Repairs & Maintenance were already included elsewhere on the return and were double expensed.

  e. Rubio falsely reported that Customer 10 incurred $450 in Repairs and $400 in Supplies. The expense for Supplies and Repairs were already included under the standard mileage deduction. Additionally, Rubio falsely reported that Customer 10 incurred $260 in Donations under Schedule C. Donations are deductible on Schedule A.

47. As a result of Rubio's conduct, the above-identified customers underreported their tax liabilities and the IRS erroneously issued refunds these customers were not entitled to receive.

## Non-Qualifying Dependents

48. Rubio overstates the EITC, CTC, and ACTC by including non-qualifying dependents to calculate her clients' claimed amounts of EITC, CTC, and/or ACTC.

49. The returns described below are specific examples of Rubio's abusive scheme of incorrectly using non-qualifying dependents:

   a. Rubio falsely reported Customer 8 had four dependents. Customer 8 has one niece and three nephews who are citizens of Mexico and lived in Mexico for the entire year. Rubio falsely claimed the Child Tax Credit and had Customer 8 fill out ITIN applications for these children so they could be claimed on the tax return. Rubio did not ask Customer 8 about his level of financial support provided to their dependents in Mexico.

   b. Rubio falsely reported Customer 2 had three dependents. Customer 2 has one niece and two nephews who are citizens of Mexico and lived in Mexico for the entire year. Rubio falsely claimed the Child Tax Credit. Customer 2 does provide some financial support to his niece and nephews, but only about 20 to 25 percent of their total support for the year.

   c. Rubio falsely reported Customer 11 has four dependents. Customer 11 only has three dependents because Customer 11 did not provide more than 50 percent of the child's care for the year.

50. As a result of Rubio's conduct, the above-identified customers underreported their tax liabilities and the IRS erroneously issued refunds these customers were not entitled to receive.

**Filing Status**

51. Rubio uses improper filing statuses that would result in an increased standard deduction which the clients are not entitled to.

52. The returns described below are specific examples of Rubio's abusive scheme of incorrectly using filing status:

    a. Rubio falsely reported Customer 12's status as Head of Household, rather than Married Filing Separately. Rubio's false filing status reporting caused Customer 12 to have a standard deduction of $3,000 more than what he was entitled.

    b. Rubio falsely reported Customer 13's status as Head of Household, rather than Single. Rubio's false filing status reporting caused Customer 13 to have a standard deduction of $3,000 more than what she was entitled.

53. As a result of Rubio's conduct, the above-identified customers underreported their tax liabilities and the IRS erroneously issued refunds these customers were not entitled to receive.

## HARM CAUSED BY DEFENDANT'S CONDUCT

54. Rubio's customers have been harmed by her actions because they paid fees for the preparation of proper tax returns.

55. Rubio prepared returns that claimed improper or fraudulently inflated refunds or credits.

56. Some customers have been audited and are now liable for tax, additions to tax, negligence penalties, and interest.

57. Rubio's conduct harms the United States because her customers are receiving refunds to which they are not entitled.

58. In addition to the direct harm caused by preparing tax returns that fraudulently underreports tax due, Rubio's activities undermine public confidence in the administration of the federal tax system.

59. Rubio's conduct also causes intangible harm to honest tax return preparers by luring customers who hear that they may incur smaller tax liabilities and/or obtain larger refunds by using Rubio's tax preparation services.

60. Rubio further harms the United States because the IRS must devote its limited resources to identifying her customers, ascertaining their correct tax liabilities, recovering any refunds erroneously issued, and collecting additional taxes and penalties owed.

61. Rubio's unlawful tax preparation practices and other acts to obstruct tax administration have resulted in significant lost tax revenues to the United States.

62. The United States has not received, and may never be able to recover, the taxes unlawfully due and owing from Rubio's customers.

63. The IRS conducted interviews with 25 of Rubio's clients for the 2016 and 2017 tax years.

64. As a result of these interviews, the IRS determined a ninety-two percent error rate on the returns prepared by Rubio that cannot be attributable to random chance.

65. For tax years 2016 and 2017, Rubio prepared a total of 2,441 individual tax returns.

66. Based on customer interviews, the IRS calculated the average underreporting of tax per return was $3,055.

67. Because these 25 returns are only a small portion of the 2,441 returns prepared by Rubio, it is likely that the tax loss to the United States is much larger than presently known.

68. The IRS conducted interviews with 47 of GIG's clients for the 2016 and 2017 tax years.

69. As a result of these interviews, the IRS determined a ninety-three percent error rate on the returns prepared by GIG, and reviewed by Rubio, that cannot be attributable to random chance.

70. For tax years 2016 and 2017, GIG prepared 5,180 individual tax returns collectively.

71. From conducting customer interviews, the IRS calculated the average underreporting of tax per return was $3,421.

72. Because these 47 returns are only a small portion of the 5,180 returns prepared by GIG, it is likely that the tax loss to the United States is much larger than presently known.

**COUNT I – INJUNCTION UNDER 26 U.S.C. § 7407**

73. The United States incorporates by reference paragraphs 1 through 72, above, as if fully set forth here.

74. Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in certain prohibited conduct or from further acting as a return preparer.

75. An injunction is warranted where the preparer's conduct includes:

    a. violating 26 U.S.C. § 6694, which penalizes a return preparer who prepares a return that contains an understatement of tax liability or overstatement of a refund that is due to an unreasonable position; or

    b. violating 26 U.S.C. § 6695(g), which penalizes a tax return preparer who does not exercise due diligence in determining eligibility for the EITC;

      c. engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

76. In order for a court to issue such an injunction, the court must find (1) that the preparer has engaged in the specified conduct defined in paragraph 75 above, and (2) that injunctive relief is appropriate to prevent the recurrence of the conduct.

77. The Court may permanently enjoin the person from further acting as a federal tax return preparer if it finds that a preparer has continually or repeatedly engaged in such prohibited conduct and a narrower injunction (*i.e.*, prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws.

78. Since 2015, Rubio has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing returns that underreport tax due based upon unreasonable and reckless positions.

79. As described in the complaint, Rubio prepares returns that claim credits or deductions to which the taxpayer is not entitled.

80. She does so with the knowledge that the positions taken on the returns are unreasonable and lack substantial authority.

81. Rubio has thus engaged in conduct subject to penalty under 26 U.S.C. § 6694(a).

82. Only a permanent injunction against acting as a return preparer, as opposed to a narrower injunction against specified conduct, will secure Rubio's compliance with the tax laws and put an end to her substantial interference with the administration of the tax laws.

83. As explained in the complaint, Rubio has engaged in a variety of fabrications and manipulations to achieve the intended tax results.

84. False deductions, unreimbursed business expenses, and use of non-qualifying dependents are some of the schemes through which Rubio fraudulently inflates a customer's claim for refund.

85. This behavior underscores the need to enjoin Rubio from all tax preparation, under 26 U.S.C § 7407.

## COUNT II – INJUNCTION UNDER 26 U.S.C. § 7408

86. The United States incorporates by reference paragraphs 1 through 72, above, as if fully set forth here.

87. Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

88. As described in paragraphs 32 through 72 above, Rubio has engaged in conduct subject to penalty under 26 U.S.C. § 6701 by preparing or directing the preparation of tax returns that claim a tax credit or deduction when she knew that her customers were not entitled to these, or at least not in the full amount claimed, and that this would understate her customers' federal tax liability.

89. Injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent the recurrence of this conduct.

**COUNT III – INJUNCTION UNDER 26 U.S.C. § 7402(a)**

90.　The United States incorporates by reference paragraphs 1 through 72, above, as if fully set forth here.

91.　Section 7402 of the Internal Revenue Code authorizes a district court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

92.　Rubio, through the actions described above, has engaged in conduct that substantially interferes with the enforcement of the internal revenue laws.

93.　Unless enjoined, Rubio is likely to continue to engage in such improper conduct and interfere with the enforcement of the internal revenue laws.

94.　If she is not enjoined from engaging in fraudulent and deceptive conduct, the United States will suffer irreparable injury by wrongfully providing federal tax refunds to individuals not entitled to receive them, much of which will never be discovered and recovered.

95.　The United States will also suffer irreparable injury because it will have to devote substantial unrecoverable time and resources to auditing Rubio's customers to detect future returns understating the customers' tax liabilities or overstating their refunds.

96.　While the United States will suffer irreparable injury if Rubio is not enjoined, Rubio will be able to pursue other financial endeavors to support herself.

97.　Enjoining Rubio is in the public interest because an injunction, backed by the Court's contempt powers, if needed, will stop her illegal conduct and the harm it causes the United States and the public fisc.

98.　Rubio should therefore be enjoined under 26 U.S.C. § 7402(a).

**RELIEF SOUGHT**

WHEREFORE, Plaintiff, the United States of America, prays for the following relief:

    A.    That the Court find that Rubio has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695 and has continually and repeatedly engaged in other fraudulent and deceptive conduct that substantially interferes with the administration of the tax laws; that injunctive relief is appropriate under 26 U.S.C. § 7407 to bar her from acting as a federal tax return preparer to prevent recurrence of that conduct; and that a narrower injunction enjoining only specified conduct would not be sufficient to prevent her interference with the proper administration of the internal revenue laws;

    B.    That the Court find that Rubio has engaged in conduct subject to penalty under 26 U.S.C. § 6701, and that injunctive relief is appropriate under 26 U.S.C. § 7408 to prevent recurrence of that conduct;

    C.    That the Court find that Rubio has engaged in conduct that substantially interferes with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent powers in equity and 26 U.S.C. § 7402(a);

    D.    That the Court enter a permanent injunction prohibiting Rubio, and all those acting in concert with or under her direction and/or control from:

        i.    preparing, filing, or assisting in the preparation or filing of federal tax returns, amended returns, and other related documents and forms, including any electronically-submitted tax returns or tax-related documents, for any entity or person other than herself;

      ii.      engaging in any activity subject to penalty under 26 U.S.C. §§ 6694, 6695, and 6701; and

      iii.      engaging in any fraudulent or deceptive conduct which substantially interferes with the proper administration and enforcement of the internal revenue laws.

E.    That the Court enter an injunction requiring Rubio, at her own expense:

      i.      To send by certified mail, return receipt requested, a copy of the final injunction entered against Rubio in this action, as well as a copy of the Complaint setting forth the allegations as to how Rubio fraudulently prepared federal tax returns, to each person for whom Rubio prepared federal tax returns or any other federal tax forms after January 1, 2015, within thirty (30) days of entry of the final injunction in this action;

      ii.      To surrender to the Secretary of the Treasury or his delegate any and all PTINs held by, assigned to, or used by Rubio pursuant to 26 U.S.C. § 6109 within thirty (30) days of entry of the final injunction in this action;

      iii.      To prominently post a copy of the injunction in Rubio's place of business where she prepared tax returns, within ten (10) days of entry of the final injunction in this action;

      iv.      To deliver a copy of the injunction to any employers, employees, contractors and vendors of Rubio, within thirty (30) days of entry of the final injunction in this action;

COMPLAINT FOR PERMANENT INJUNCTION    17    **U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-514-6632

        v.      To file a sworn statement with the Court evidencing Rubio's compliance with the foregoing directives within forty-five (45) days of entry of the final injunction in this action; and

        vi.      To keep records of Rubio's compliance with the foregoing directives, which may be produced to the Court, if requested, or the United States pursuant to paragraph F, below;

    F.    That the Court allow the United States full post-judgment discovery to monitor compliance with the injunction;

    G.    That the Court retain jurisdiction over Defendant and this action to enforce any permanent injunction entered; and

    H.    That the Court grant the United States such other and further relief as the Court deems appropriate.

Dated: August 9, 2021

        Respectfully submitted,

        DAVID A. HUBBERT
        Acting Assistant Attorney General

        */s/ Cassondra L. McCormick*
        CASSONDRA L. MCCORMICK
        Trial Attorney, Tax Division
        U.S. Department of Justice
        P.O. Box 683
        Washington, D.C. 20044
        202-514-6632 (v)
        202-307-0054 (f)
        Cassondra.L.McCormick@usdoj.gov
        *Attorney for the United States of America*